UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRISTINA DIAZ PABON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-6640 |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, CRISTINA DIAZ PABON, by and through her counsel, Jeffrey Law Office, LLC, and complains of Defendant BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, and states as follows:

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

### JURISDICTION & VENUE

1. This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et. Seq. and 28 U.S.C. § 1331.

2. Venue is proper in this Court under 28 U.S.C. § 1391, as Defendant resides in this District, all of the events or omissions giving rise to these claims occurred in this District, and Plaintiff was hired, employed, and harmed by Defendant in this District.

### PARTIES

3. Plaintiff, CRISTINA DIAZ PABON ("Plaintiff"), was at all times relevant to this suit an adult who is Hispanic and of Puerto Rican origin, residing in Bensenville, Illinois. At all

1

times relevant, Plaintiff was employed by Defendant in this District. Plaintiff was hired, employed, and harmed by Defendant in this District.

4. Defendant, BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS ("Defendant"), governs the University of Illinois Chicago, which is a comprehensive public university and major health system. It is one of the three campuses known as the University of Illinois, with one of its locations at 1740 W. Taylor, Chicago, IL 60612. It has obligations as an indemnitor of conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq*. Defendant hired, employed, and harmed Plaintiff in this District. Defendant employs at least 15 full-time employees and therefore is a covered employer under Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about December 1, 2024, Plaintiff timely filed Charges of Discrimination alleging race and national origin discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2025-02006 against Defendant.

6. On March 18, 2025, the EEOC issued Plaintiff a Notice of Right to Sue.

7. Therefore, Plaintiff's Complaint has been filed in a timely manner; and Plaintiff has fully complied with all prerequisites to jurisdiction in this Court.

## UNDERLYING FACTS COMMON TO ALL COUNTS

8. In February 2020, Plaintiff was hired as a Registered Nurse Resuscitation Coordinator by Defendant d/b/a University of Illinois in Chicago Hospital and Health Sciences System.

9. Plaintiff's race is Hispanic.

10. Plaintiff's National Origin is Puerto Rican.

2

11. Defendant was apprised of Plaintiff's Race and National Origin.

12. Plaintiff performed her job satisfactorily within legitimate expectations of Defendant.

13. At all times relevant hereto, Jill M. Stemmerman, was the Associate Chief Nursing Officer Critical Care, and has been harassing Plaintiff, creating a hostile work environment, due to her race and national origin.

14. On October 4, 2023, Linsey Thattil a new Clinical Decision Unit Director was placed, this director had no experience. Previously, under Jill Stemmerman, Melissa Angulo, Julia Berg, Grace Zieba, and Jason Harris all hired as Directors had no Director experience.

15. On January 2, 2024, Plaintiff returned to work after maternity leave.

16. On January 8, 2024, Plaintiff and Jill Stemmerman met; Stemmerman stated that the role of Resuscitation Coordinator will end once the Director is selected.

17. On or around January 9, 2024, multiple leaders shared that Jill M. Stemmerman shared her disappointment that Plaintiff is back from maternity leave and that things were going well without Plaintiff in the prior months and now that Plaintiff is back, she is only causing trouble.

18. On January 12, 2024, the Critical Care Outreach Team Director role was posted.

19. On or about February 7, 2024, Plaintiff filed a complaint with Jolie Hollima-Douge, Office of Access, and Nursing leadership regarding the grievance with the hospital and concerns of discrimination, bias, and concern of retaliation. Plaintiff reported Jill Stemmerman.

20. On March 20, 2024, and April 23, 2024, Plaintiff was interviewed for the Critical Care Outreach Team Director role after being selected by the initial interview committee.

21. On May 22, 2024, Plaintiff met with Jill Stemmerman. In this discussion, Jill Stemmerman stated that she selected someone named "Liza" to be the Critical Care Outreach Team

Director; however, she declined the offer. Jill Stemmerman shared that Plaintiff was not a good fit for her; she shared that Plaintiff is "too loud," and "it is because Plaintiff is Spanish." Once the meeting ended, Plaintiff reported the statements to Darlene Evans. Plaintiff also requested to take the rest of the day off in addition to the next day.

22. On May 28-29, 2024, Plaintiff requested guidance from Darlene Evans for concerns of discrimination, and she directed Plaintiff to the Office of Access and Equity.

23. On June 4, 2024, Darlene Evans met with Jill Stemmerman, Sisay Mersha, and David Barishman to discuss transition plans. In this meeting, Jill Stemmerman shared that because Plaintiff did not get the director role it did not mean Plaintiff does not do her job.

24. On June 10, 2024, in the Associate Chief Nursing Officer meeting, Jill Stemmerman admitted to saying she told Plaintiff she was not a good fit because she is Hispanic and that she went all about this in the wrong way, started crying, and apologized to the Associate Chief Nursing Officers.

25. On June 14, 2024, Jill Stemmerman interviewed a potential interim Critical Care Outreach Team Director and she was not able to provide details of the program and shared that Plaintiff "was leaving the hospital" and told the potential interim "not to worry about [Plaintiff]." Plaintiff informed David Barishman of this information and requested that she stop spreading rumors, telling everyone that Plaintiff was leaving.

26. On June 25, 2024, Plaintiff requested to meet with Chief Nursing Officer Tiesa Hughes-Dillard to share concerns regarding the Resuscitation Coordinator role ending, Critical Care Outreach Team, and discuss rumors and discussions.

27. On July 4, 2024, a letter was sent by UI Health Residents to UIC Hospital Administration sharing their disappointment in the hospital's actions to Plaintiff. Hospital leadership did not respond to the intent of the letter and dismissed the concern.

28. On July 16, 2024, Plaintiff and Lisa Caridine met to discuss the interview process. Plaintiff shared her concerns regarding discrimination, bias, and Jill M. Stemmerman's statements; however, Mrs. Caridine shared that she met with Dr. Hughes-Dillard prior to the meeting and made up her mind regarding the interview process. Plaintiff asked Mrs. Caridine to speak to other leaders involved with the program; however, this did not occur.

29. On August 1, 2024, the Office of Access and Equity shared a letter that measures were put in place in response to Plaintiff's complaint.

30. On October 23, 2024, Plaintiff shared her concerns regarding reliability of leadership and Plaintiff's lack of confidence in their ability to develop a transition plan.

31. On October 28, 2024, Plaintiff emailed leadership and complained that her reputation and recent investigations into her role and her work were disheartening.

32. Since April of 2024, Plaintiff had not been invited to any meetings regarding the Critical Care Outreach Team program. Due to Jill Stemmerman, rumors have spread that Plaintiff is unprofessional, and that she has poor behavior unbecoming of a director.

33. Due to Jill Stemmerman, rumors spread that Plaintiff is unprofessional, lacks emotional intelligence, and that she has poor behavior unbecoming of a director. However, it is the behavior demonstrated by Jill M. Stemmerman that is unbecoming of a Professional Registered Nurse and violates UI Health's missions, values, ICARE behavioral standards, and the ethical and legal obligations of the nursing practice.

34. Jill Stemmerman did not select Plaintiff because of racial discrimination and bias and retaliated against her following her complaints.

35. On or about November of 2024, Jill Stemmerman informed some of the Directors and Associate Chief Nursing Officers that she is being sued because she said I was too loud and Mexican.

36. Due to the toxic work environment created by Jill Stemmerman, Plaintiff decided to accept the role of Senior Quality Specialist within the organization. Her last day in the role of Resuscitation Coordinator was on November 23, 2024.

37. Thus, after 16 years, Plaintiff left the nursing division due to the hostile and toxic work environment due to the discriminatory and retaliatory conduct, which Defendant failed to address.

38. On January 16, 2025, Ghiana (Ghia) Buhay, who had no experience, became the Director of Neonatal Intensive Care Unit, Pediatrics, and Pediatric Intensive Care.

39. On June 12-13, 2025, the Critical Care Outreach Team program was presented to the representatives of American Nurses Credentialing Center for Magnet designation and the Director and Jill Stemmerman took credit for the entire program. It was shared that same day that Plaintiff's name was removed from the Magnet stories so that the personnel do not ask to speak to the Plaintiff.

40. Because of Plaintiff's race and national origin, Plaintiff was subjected to disparate treatment and discrimination, including being denied promotions.

41. Because Plaintiff reported discrimination, exercising a right and protected activity, she was subjected to escalated disparate treatment, harassment, and denied promotions.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq

42. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

43. Plaintiff, as a Hispanic, is a member of a protected class.

44. Plaintiff was qualified to perform her job and satisfactorily performed her duties and responsibilities within Defendant's legitimate expectations.

45. Plaintiff apprised Defendant of her race, Hispanic.

46. Defendant discriminated against Plaintiff because of her race by refusing to accommodate her desire of a safe and free non-discriminatory work place and for harassing and discriminating against her for the same, creating a hostile work environment, and would not have done so had Plaintiff not been Hispanic and everything else having been the same.

47. Other White employees subjected to the same work environment, policies, procedures, and guidelines as Plaintiff were not discriminated against as Defendant accommodated those employees' safe and free non-discriminatory workplace rights. This unlawful discrimination directly impacted Plaintiff's terms and conditions of employment with Defendant.

48. Plaintiff's race was a substantial and motivating factor in Defendant's decision to discriminate against Plaintiff. Defendant would not have discriminated against Plaintiff absent consideration of Plaintiff's race.

49. Defendant's discrimination constitutes unlawful discrimination in direct violation of Title VII.

WHEREFORE, Plaintiff, CRISTINA DIAZ PABON, respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

A. Declare, decree, and adjudge that Defendant violated Title VII;

B. Grant an injunction against Defendant from violating Title VII and to protect other employees from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that she was denied or lost;

D. Order Defendant to pay the Plaintiff compensatory damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

F. Award the Plaintiff her reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

## COUNT II – NATIONAL ORIGIN DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq

50. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

51. Plaintiff, of Puerto Rican descent, is a member of a protected class.

52. Plaintiff was qualified to perform her job and satisfactorily performed her duties and responsibilities within Defendant's legitimate expectations.

53. Plaintiff apprised Defendant of her national origin, Puerto Rican.

54. Defendant discriminated against Plaintiff because of her national origin by refusing to accommodate her desire of a safe and free non-discriminatory work place and for harassing and discriminating against her for the same, creating a hostile work environment, and would not have done so had Plaintiff not been Puerto Rican and everything else having been the same.

55. Other White employees subjected to the same work environment, policies, procedures, and guidelines as Plaintiff were not discriminated against as Defendant accommodated

those employees' safe and free non-discriminatory workplace rights. This unlawful discrimination directly impacted Plaintiff's terms and conditions of employment with Defendant.

56. Plaintiff's national origin was a substantial and motivating factor in Defendant's decision to discriminate against Plaintiff. Defendant would not have discriminated against Plaintiff absent consideration of Plaintiff's national origin.

57. Defendant's discrimination constitutes unlawful discrimination in direct violation of Title VII.

WHEREFORE, Plaintiff, CRISTINA DIAZ PABON, respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

    A.    Declare, decree, and adjudge that Defendant violated Title VII;

    B.    Grant an injunction against Defendant from violating Title VII and to protect other employees from such violations;

    C.    Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that she was denied or lost;

    D.    Order Defendant to pay the Plaintiff compensatory damages;

    E.    Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

    F.    Award the Plaintiff her reasonable attorney's fees and costs; and

    G.    Award such other and further relief as it is just and appropriate, including nominal damages.

## COUNT III – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq

58. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

59. It is an unlawful employment practice for an employer to fail or refuse to hire, refuse to promote, or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, for engaging in a protected activity.

60. Plaintiff, as a Hispanic and Puerto Rican, is a member of a protected class under Title VII.

61. Plaintiff engaged in a Title VII protected activity by reporting discriminatory acts by Defendant.

62. Defendant knowingly and intentionally engaged in harassment of Plaintiff by creating an intolerable, hostile work environment for Plaintiff, including refusing to promote her due to discriminatory and retaliatory reasons.

63. Defendant's decision to discriminate and retaliate against Plaintiff was solely motivated by the fact that she reported discrimination.

64. Defendant would not have retaliated against Plaintiff had she not reported the discrimination. The retaliation against Plaintiff directly impacted her terms and conditions of employment with Defendant.

65. Defendant's retaliation against Plaintiff constitutes unlawful discrimination in direct violation of Title VII.

66. As a direct and proximate result of Defendant's unlawful and willful violations, Plaintiff has suffered economic and non-economic damages, including but not limited to loss of wages, emotional distress, damaged reputation, humiliation, anguish and outrage.

WHEREFORE, Plaintiff, CRISTINA DIAZ PABON, respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

A. Declare, decree, and adjudge that Defendant violated Title VII;

B. Grant an injunction against Defendant from violating Title VII and to protect other employees from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that she was denied or lost;

D. Order Defendant to pay the Plaintiff compensatory damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

F. Award the Plaintiff her reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

Dated: June 16, 2025

/s Antonio L. Jeffrey
Attorney for Plaintiff

JEFFREY LAW OFFICE, LLC
Antonio L. Jeffrey (#6308345)
1301 W. 22nd Street, Suite 308
Oak Brook, Illinois 60523
(312) 583-7072
(312) 583-0888 (fax)
ajeffrey@jeffreylawoffice.com